COMMUNITY RESEARCH and DEVELOPMENT CORPORATION, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Community Research & Development Corp. v. Commissioner
Docket No. 10560-76.
United States Tax Court
T.C. Memo 1979-264; 1979 Tax Ct. Memo LEXIS 262; 38 T.C.M. (CCH) 1043; T.C.M. (RIA) 79264; July 16, 1979, Filed Richard C. Silman (an officer), for the petitioner. Joel V. Williamson, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's income tax for its fiscal year ended June 30, 1973, in the amount of $823.25. Certain issues raised by the pleadings having been conceded by respondent, the following remain for our decision: (1) Whether petitioner is entitled to a claimed bad debt deduction in the amount of $840; (2) whether petitioner is entitled to a deduction in the amount of $567.18 *263 paid by it during the taxable year here in issue as Federal corporate income tax; and (3) whether the amounts of $372.30 of the depreciation deduction claimed by petitioner, $58.20 of insurance expense deduction claimed, $174.71 of real estate taxes deduction claimed, and $6.66 of fire service fees deduction claimed should be disallowed because of the use of a portion of its building as a residence by its sole stockholder and his wife. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner, a West Virginia corporation with its corporate office in Harmony, West Virginia, at the time of the filing of its petition in this case, filed its Federal corporate income tax return for its fiscal year ended June 30, 1973, with the Internal Revenue Service Center, Memphis, Tennessee. Richard C. Silman was president and sole stockholder of petitioner during its fiscal year ended June 30, 1973. He signed petitioner's corporate income tax return as its president. During the year here involved, petitioner owned a building and its business was rental of this building. On page one of its Federal corporate income tax return, petitioner reported as *264 gross rentals $6,195 and reported this exact same amount as its total income for its fiscal year ended June 30, 1973. On a schedule attached to this return, petitioner showed the following: Gross Rent -- page 1 Line 7
Architect Firm Rental
$6,195.00
Apartment Rental
840.00
On its return, petitioner claimed a bad debt deduction of $840.The bad debt deduction was claimed with respect to apartment rentals which petitioner claimed to be uncollectible. Respondent in his notice of deficiency disallowed this bad debt deduction claimed by petitioner. The following schedule shows the other deductions claimed by petitioner on its return. The amounts of these claimed deductions disallowed by respondent in his notice of deficiency and the amounts now conceded by respondent to be deductible were the following: Deductions
Items Amount Claimed
Claimed
Taxes
$1,648.08
Interest
1,374.88
Depreciation
1,241.00
Other De-
deductions
316.23
Deductions
Amount Disallowed
Amount Respondent Now
by Respondent
Concedes to be Allowable $ 990.22 $ 906.19
1,374.88
1,374.88
372.30
868.70
164.86
251.37
The amount of real *265 estate taxes which respondent still contends is not allowable as a deduction is $174.71 which respondent contends represents the amount of real estate taxes paid by petitioner which is applicable to the portion of its building used as a personal residence by its sole stockholder. The balance of the amount of taxes in controversy is $567.18, which is the amount of corporate income tax paid by petitioner during its fiscal year ended June 30, 1973. The $372 of depreciation which respondent still contends is not properly allowable represents the portion of depreciation claimed by petitioner which respondent contends is applicable to the portion of petitioner's building in which petitioner's sole stockholder resided. The portions of the claimed other deductions which respondent has not conceded as being allowable consist of $58.20 of insurance paid by petitioner on its building, and $6.66 of the fire service fee paid on that building, which amounts respondent contends are applicable to the portion of the building in which petitioner's sole stockholder resided.
Under dates of July 1, 1971, July 1, 1972, July 1, 1973, July 1, 1974 and July 1, 1975, petitioner signed on behalf of both *266 the lessor and lessee, sometimes designating one of his signatures as president CR&DC (apparently Community Research and Development Corporation), documents entitled "Lease Agreement." These documents in effect stated that Community Research and Development Corporation (petitioner) leased to Richard C. Silman certain portions of a building to be used by Richard C. Silman as an apartment. The documents also recited that the amount listed as the payment under the lease was "net net" in that the lessee was not required to pay any utilities, insurance, taxes or assessments and fees. The various documents show different amounts of rental to be paid -- the document dated July 1, 1972, showing $85 per month as the monthly rental. Similar documents going back to 1967 were drawn up between petitioner and "Richard C. Silman, Architect" except that it was recited that the portion of the building leased should be used to carry on the professional practice of architecture or engineering, and the rentals provided ranged from $300 to $600 per month. During petitioner's fiscal year ended June 30, 1974, it received no cash rental payments from Richard C. Silman as an individual as distinguished *267 from payments it received from Richard C. Silman, Architect. However, certain documents designated as demand notes were drawn up during the year to the order of petitioner by Richard C. Silman as an individual. One of these documents in the form of a note dated January 20, 1973, is in a stated amount of $1,395. On the document is written"Collect as Bad Debt -- 840 --" is written "Collect as Bad Debt -- 840 --" June 73." The document in the form of a note, dated June 30, 1973, has marked thereon "paid 2-24-76." On the bottom of the document dated January 20, 1973, appears the notation "Rent Apartment," and on the bottom of the document dated June 30, 1973, appears the notation "Apartment Rental Note." Both documents bear the notation: "No Int." OPINION This record is entirely inadequate to support petitioner's claimed bad debt deduction of $840. In the first place, it is clear that the $840 claimed by petitioner as a bad debt was not included in petitioner's income for its fiscal year ended June 30, 1973. Apparently, since it relates to a note given in January 1973, it would not have been included in petitioner's income in any prior year. For this reason alone, the claimed *268 $840 bad debt deduction is not properly deductible. In addition, petitioner has totally failed to show that the alleged note given to it by its sole stockholder, Richard C. Silman, was uncollectible as of the end of its fiscal year 1973. For this further reason, the claimed bad debt is not properly deductible. Section 164, I.R.C. 1954, [1] provides for the deduction of real property taxes, personal property taxes, state and local, and foreign income taxes, and state and local general sales taxes, and state and local, and foreign taxes not previously described which are paid in carrying on a trade or business. Clearly, Federal income taxes are not deductible under this section. Furthermore, section 275(a) specifically provides that no deduction shall be allowed for Federal income taxes. We, therefore, hold that petitioner is not entitled to deduct the $567.18 that it paid as Federal income taxes in its fiscal year 1973. The final issue in this case poses a more difficult question. Respondent has not questioned the existence *269 of petitioner as an entity separate from its sole stockholder. Under these circumstances, a bona fide agreement between petitioner and its sole stockholder whereby the stockholder leased living quarters from the corporation would be recognized as a business transaction of the corporation. There is a scarcity of evidence in this record to support the bona fides of petitioner's agreement with its sole stockholder leasing living space to its sole stockholder. Petitioner's sole stockholder, Mr. Silman, testified with respect to the lease. He testified that the rental was adequate, particularly since he performed certain services with respect to the property which would ordinarily not be performed by a tenant. The record does not support any payment in the year here in issue by Mr. Silman to petitioner for the leased apartment, but there are indications that amounts were paid in other years as rental. Under these circumstances it would appear that if rental due petitioner by its officer-stockholder were considered as forgiven in the year here in issue, this forgiveness of indebtedness might be considered either as compensation to the officer or a dividend to the stockholder. If a fair *270 rental for the apartment had been received by petitioner in its fiscal year 1973, all proper depreciation and taxes and expenses paid on the property would be allowable as a deduction to the corporation. It appears that a fair rental was initially arranged for. A "note" was given for this rental and part of that note was written off by petitioner as a bad debt and part paid in a later year. The write-off of part of the note appears in effect to be a forgiveness of indebtedness. While this issue is not free from doubt, under all the circumstances here, we determine that petitioner properly deducted the real estate taxes, depreciation and expenses on its property in full. We do not have the issue before us as to whether the apparent cancellation of $840 of the document designated as a note, given to petitioner by its sole stockholder, should properly be considered compensation or dividend income to the officer-stockholder. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year here involved.↩